# RECORD NO. 13-2338

_____

In The

# United States Court of Appeals

### For The Fourth Circuit

## MONICA L. BALL,

Plaintiff-Appellant,

## v.

## TAKEDA PHARMACEUTICALS AMERICA, INCORPORATED; TAKEDA PHARMACEUTICAL COMPANY LIMITED, a Japanese Corporation at. el.

Defendants-Appellees.

_____

## OPENING BRIEF OF APPELLANT
_____

Jerrod M. Smith
JERROD MYRON SMITH & ASSOCIATES
6802 Paragon Place, Suite 410
Richmond, Virginia 23230
(804) 426-5645 (telephone)
(804) 441-6001 (facsimile)

*Counsel for Appellants*

_____

# Table of Contents

TABLE OF CONTENTS…………………………………………………….……i

TABLE OF AUTHORITIES…………………………………………………vi

I. STATEMENT OF THE SUBJECT MATTER & APPELLATE JURISDICTION………………………………………………….…….…..1

II.      STATEMENT OF THE ISSUE PRESENTED FOR REVIEW……….…..2

i.      Question Presented…………………………………………….2

Whether the District Court erred when it denied the Appellant's motion to Amend Complaint when material evidence from another lawsuit against the Appellees by the government revealed evidence that the Appellees had acted in bad faith in arguing for dismissal of fraud, and punitive damages claims of the Appellant?

ii.      Question Presented…………………………………………….2

Whether the District Court erred when it dismissed two complaints stating they failed to state a claim for which relief could be granted?

iii.      Question Presented…………………………………………….2

Whether the District Court erred when it limited the Appellant's Amended Complaint to only 12 pages, and then dismissed the Appellant's First Amended complaint for failure to state a claim for which relief can be granted when the Appellant found after discovered evidence, which supported prior causes of actions the District Court dismissed with prejudice?

iv.      Question Presented…………………………………………….2

Whether the District Court erred when it denied the Appellant's motion to extend discovery due to the after discovered evidence, and the fact Appellees hid material information concerning Appellant's claims?

v.    Question Presented……………………………………………………3

Whether the District Court erred when it dismissed with prejudice the matter of first impression concerning the failure to warn due to the Physicians' standard of care of not having to warn patients of side-effects which affect less than 2% of the population, and the standard of care of the pharmaceutical company in providing warnings to the consumers of their products?

vi.    Question Presented……………………………………………………3

Whether the District Court abused its discretion in denying an extension to bring on new counsel and to provide the expert opinion in light of the circumstances, of the newly discovered evidence, which would change the opinion of the Appellant's experts, and for which the court had the Appellant submit the expert opinion early, for the benefit of the Appellees?

vii.    Question Presented……………………………………………………3

Whether a Pharmaceutical Company may be held liable for the alleged acts of misrepresentation, fraud, negligence and other violations in which the complaint gave the Company sufficient notice within the pleading of the injuries, damages, and the allegations against the Company?

III.    STATEMENT OF THE CASE……………………………………………3

IV.    STATEMENT OF THE FACTS/FACTCUAL ALLEGATIONS ……..…5

V.    SUMMARY OF ARGUMENT …………………………………….…..8

VI.    ARGUMENT……………………………………………………….……8

Summary of Review ………………………………………………….…..8

        (i) Discussion of the Issues………………………………………………9

I.    Whether the District Court erred when it denied the Appellant's …………9 motion  to Amend Complaint when material evidence from another lawsuit against the Appellees by the government revealed evidence that the Appellees had acted in bad faith in arguing for dismissal of fraud, and punitive damages claims of the Appellant?

A.    NOTICE-OF FRUDULANT ACTS LATER DISCOVERED IS………… 13 SUFFICIENT TO ALLOW A REQUEST AND A GRANTING OF A MOTION TO AMENDMEND THE PLEADING PRINCIPLES TO PROVIDE RELIEF IN REGARDS TO A MATERIAL FACT TO DEMONSTRATE APPELLANT'S CLAIMS STEMMING FROM A CAUSE OF ACTION THAT WAS DISMISSED WITH PREJUDICE IN CIRCUMSTANCES OF BAD FAITH OF THE APPELLEES

Governing Standard ……………………………………………..…….13

B. Discussion ………………………………………………………….…..14

C. Recent developments in rule 15 ……………………………………...15

1.    Amending with Leave of the Court …………………………………….15

II.    Whether the District Court erred when it dismissed two complaints ……19 stating they failed to state a claim for which relief could be granted.

A.    NOTICE-PLEADING PRINCIPLES RELIEVED PLAINTIFF OF…….19 PLEADING FACTS TO DEMONSTRATE HER CLAIMS

B. The Supreme Court Held That Plaintiffs Are Not Required To Plead ……...22 And Abundant Amount of Facts Establishing Their Claims

C. Case Law Shows That Appellant Could Amend Complaint even at the…….24 dismissal of her complaint under the circumstances of this matter

III.    Whether the District Court erred when it limited the Appellant's ……...27 Amended Complaint to only 12 pages, and then dismissed the Appellant's First Amended complaint for failure to state a claim for which relief can be

granted when the Appellant found after discovered evidence, which supported prior causes of actions the District Court dismissed with prejudice?

A.    Rule 8. General Rules of Pleading……………………………..……….27

IV.    Whether the District Court erred when it denied the Appellant's …………30 motion to extend discovery due to the after discovered evidence, and the fact Appellees hid material information concerning Appellant's injuries.

A.    Rule 16(b)……………………………………………………………….30

V.    Whether the District Court erred when it dismissed with prejudice……….33 the matter of first impression concerning the failure to warn due to the Physicians' standard of care of not having to warn patients of side-effects which affect less than 2% of the population, and the standard of care of the pharmaceutical company in providing warnings to the consumers of their products.

A.    FORD MOTOR COMPANY v. Walter E. BOOMER, Administrator…....33 Honeywell International, Inc. v. Walter E. Boomer, Administrator. Record Nos. 120283, 120299.

Substantial Factor Causation ………………………………………………..35

VI.    Whether the District Court abused its discretion in denying an …………...39 extension to bring on new counsel and to provide the expert opinion in light of the circumstances, of the newly discovered evidence, which would change the opinion of the Appellant's experts, and for which the court had the Appellant submit the expert opinion early, for the benefit of the Appellees.

A. Good Cause to Extend Time For Disclosure of Experts ………………………39

B. Request for New Counsel to Join Team Appellant Is Norm In Litigation…....42

VII.    Whether a Pharmaceutical Company may be held liable for the …….....…43
        alleged acts of misrepresentation, fraud, negligence and other violations in
        which the complaint gave the Company sufficient notice within the pleading
        of the injuries, damages, and the allegations against the Company.

(i)The Amended Complaint That Was Limited To 12 Pages By The Court…..…48

§ 54.1-3426 Regulations for special packaging…………………..…………..51

C.      The District Court stated it dismissed the Complaints concerning……...56
        Stevens Johnson without considering the issues with the package inserts, and
        the standards of care of physicians.

D.      The District Court did not consider the issue of the deformity of the……57
        Appellant's fallopian tube stemming from the use of Dexilant, which is not
        related to her claims of Stevens Johnson.

RELIEF FROM JUDGMENTS …………………………………………….…58

Conclusion………………………………………………………………………58

## **Table of Authorities**

### **Federal Cases**

### **United States Supreme Court**

*Albright v. Oliver, 510 U.S. 266, 268 (1994)*……………………………………………*53*

*Ashcroft v. Iqbal,556 U.S. 662, 678 (2009)*………………………………*14, 24,25, 54*

*Bell Atl. Corp. v. Twombly, 550 U.S. 544* (2007)………..………14, 44, 45, 46,54, 55

*Bivens v. Six Unknown Named Agents of Fed.Bureau of Narcotics, 403 U.S. 388*………………………………………………………………………………..…*14*

*Bylin v. Billings, 568 F.3d 1224, 1230 (10th Cir.2009 )*…………………………30

*Defenders of Wildlife*, 504 U.S. at 561 ……………………………….……………23

*Ericksen v. Padres, 551 U.S. 89, 94 (2007)*………………………………………*54*

*Foman v. Davis*, 371 U.S. 178, at 182 (1962) …………………….……………16

Hishon *v. King & Spalding,.* 467 U.S. *69, 73 (1984)*……………………………23

*Nat'l Wildlife Fed'n*, 497 U.S. at 889 (citing *Conley*, 355 U.S. at 45-46).........22, 23

*NOW, Inc. v. Schiedler*, 510 U.S. 249, 256 (1994) …………………………...….23

### **Fourth Circuit**

*American Chiropractic Association, Inc. v. Trigon. Healthcareat 367 F 3d 212....9*

*Burbach Broad Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002) …………………………………………………………………………....9*

*CGM, LLC v. BellSouth Telecommunications, Inc.,* 664 F.3d 46, 51 (4th Cir. 2011)……………………………………………………………………………..…………………8

*Clardy v. Duke Univ.,* 299 F.2d 368, 369–70 (4th Cir. 1962) …………………….17

*Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999)………………………………………………………………………………………53

*Hevman v. M.L. Marketing Co.,* 116 F.3d 91 (4th Cir.1997) …………………….9

*Hodgson v. Virginia Baptist Hosp.,* 482 F.2d 821, 823 (4th Cir. 1977)…………22

*Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)………………..53

*Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F3d176, 180 (4th Cir. 2009)…………….54

*Slade v. Hampton Rds. Reg'l Jail,* 407 F.3d 243, 248(4th Cir. 2005)…………….8

*United States of America at. el. ex. rel. Helen Ge, M.D. v. Takeda Pharmaceuticals at. el, 1:11-cv-10343-FDS*…………………………………………………………….10

## Other Circuits In Persuasive

*Christopher M. Fairman, Heightened Pleading*, 81 Tex. L. R. 551, 556 (2002)....22

*Groninger v. Davison,* 364 F.2d 638, 640 (8th Cir.1966)…………………….……13

*Hutchinson ex rel. Baker v. Spink,* 126 F.3d 895, 900 (7th Cir. 1997)…………..22

*In re Tower Air,* 416 F.3d at 237 (3rd Cir)…………………………………..……24

*McIndoo v. Burnett,* 494 F.2d 1311, 1313 (8th Cir.1974)………………………..13

*Sanjuan v Am. Bd. of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994) ……………………………………………………………………….…………22

*Thomson v. Washington,* 362 F.3d 969, 970 (7th Cir. 2004) …………………….22

*Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.,* 2007 U.S. Dist. LEXIS 56492, at (D.N.M. June 5, 2007)(Browning, J.)(10th Cir)……………………….31

*Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 224 (8th Cir.1994)…...13

## United States Constitution

U.S. Const. art III, § 2. ………………………………………………………1

## United States Codes

15 U.S.C. § 1471……………………………………………..……..51
28 U.S.C. § 1332………………………………………………………..1
28 U.S.C. § 1332(a)(1)……………………………………………………1
28 U.S.C. § 1337……………………………………………………..1
42 U.S.C. § 1983 (2006) ………………………………………..………15

## Federal Rules of Civil Procedure

Federal Rule Civil Procedure 8. …………………………………25, 27, 28, 43, 53

Federal Rule Civil Procedure 8(a). ………………………………………21, 22, 53

Federal Rule Civil Procedure 8(a)(2), 28 U.S.C.A……………………..……..44

Federal Rule Civil Procedure 8(e). …………………………………………28

Federal Rule Civil Procedure 12(b)(6), 28 U.S.C.A….11, 15, 17, 19, 23, 44, 55, 56

Federal Rule Civil Procedure Rule 15…………………………….…………… 16, 25

Federal Rule Civil Procedure Rule 15(a)…………………….…………………13, 16

Federal Rule Civil Procedure 15(a)(2) ………………………..……………15

Federal Rule Civil Procedure 15(b)(1)………………………..……..………16

Federal Rule Civil Procedure 16. ……………………………...……………30

Federal Rule Civil Procedure 16(b)……………………………….…………30

Federal Rule Civil Procedure 16(b)(4) …………………………………….…..30

Federal Rule Civil Procedure 26………………………………………………40

Federal Rule Civil Procedure 26(a)(2)(B) or (C)……………………..……..41

Federal Rule Civil Procedure 26(f). ………………………………...……………30

Federal Rule Civil Procedure 56 motion …………………………….…………..23

Federal Rule Civil Procedure 59 …………………………………………………..25

Federal Rule Civil Procedure 59(e) …………………………………………….16

Federal Rule Civil Procedure 60 …………………………….………..…….16, 25

Federal Rule Civil Procedure 60(b) ……………………………………….9, 17

Federal Rule Civil Procedure 62 ………………………………………...25, 41

Federal Rule Evidence 702 …………………………………………………….40

Federal Rule Evidence 703 …………………………………………………….40

Federal Rule Evidence 705 …………………………………………………….40

## **Virginia Case Law**

*Ford Motor Company v. Walter E. Boomer at el. Nos. 12083, 120299....33, 35,36*

*Honeywell International Inc. v. Walter E. Boomer, administrator, No. 120299, Va. Sup.)…………………………………………………………………….34, 35*

*McClanahan v. California Spray–Chemical Corp., 194 Va. 842, 853–54, 75 S.E.2d 712, 718 (1953)……………………………………………………………...33*

## **Virginia Code**

Va. Code 54.1 …………………………………………………..……………50

§ 54.1-2952.1……………………………………………………………………37

§ 54.1-2957.01…………………………………………………………………..37

§ 54.1-3222 …………………………………………………..…………………37

§ 54.1-3303…………………………………………………………………….37

§ 54.1-3304…………………………………………………………………..37, 50

§ 54.1-3310…………………………………………………………………… 51

§ 54.1-3410……………………………………………….…………….. 51

§ 54.1-3426 ……………………………………………….…………51

**Restatements**

Restatement (Third) of Torts Sections 26 and 27 …………………………….35

**Law Treatise**

*Simplified Pleading*, 2 F.R.D. 456, 456-67 (1943) …………………….……..53

Charles E. Clark, *Handbook of the Law of Code Pleadings* §38, 241-43 (2d ed.).53

*Erickson v.Padres, 551 U.S. 89, 94 (2007)………………………….……………..54*

*Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d176, 180 (4th Cir. 2009)…….……..54*

**Legal Dictionary**

BLACK'S LAW DICTIONARY 191 (9th ed. 2009) ………………..………15

# I. STATEMENT OF THE SUBJECT MATTER & APPELLATE JURISDICTION

This action was originally brought by the Appellant under the Diversity of Citizenship stemming from the constitution's Statutory Basis for Diversity Jurisdiction The Constitution allows the judicial power of the United States to extend to cases involving "Controversies . . . between Citizens of different States." U.S. Const. art III, § 2. Congress effectuated this provision in 28 U.S.C. § 1332: The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a)(1).

In addition, this action also was brought under Supplemental Jurisdiction under Section 1367(a) which states (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Further, this Appellate Court has jurisdiction of this matter due to the Appeal from the final judgment of the United States District Court for the Eastern District of Virginia, thus granting appellate jurisdiction.

## II.    STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

### i.    Question Presented

Whether the District Court erred when it denied the Appellant's motion to Amend Complaint when material evidence from another lawsuit against the Appellees by the government revealed evidence that the Appellees had acted in bad faith in arguing for dismissal of fraud, and punitive damages claims of the Appellant?

### ii.    Question Presented

Whether the District Court erred when it dismissed two complaints stating they failed to state a claim for which relief could be granted.

### iii.    Question Presented

Whether the District Court erred when it limited the Appellant's Amended Complaint to only 12 pages, and then dismissed the Appellant's First Amended complaint for failure to state a claim for which relief can be granted when the Appellant found after discovered evidence, which supported prior causes of actions the District Court dismissed with prejudice?

### iv.    Question Presented

Whether the District Court erred when it denied the Appellant's motion to extend discovery due to the after discovered evidence, and the fact Appellees hid material information concerning Appellant's claims.

### v.    Question Presented

Whether the District Court erred when it dismissed with prejudice the matter of first impression concerning the failure to warn due to the Physicians' standard of care of not having to warn patients of side-effects which affect less than 2% of the population, and the standard of care of the pharmaceutical company in providing warnings to the consumers of their products.

### vi.    Question Presented

Whether the District Court abused its discretion in denying an extension to bring on new counsel and to provide the expert opinion in light of the circumstances, of the newly discovered evidence, which would change the opinion of the Appellant's experts, and for which the court had the Appellant submit the expert opinion early, for the benefit of the Appellees.

### vii.    Question Presented

Whether a Pharmaceutical Company may be held liable for the alleged acts of misrepresentation, fraud, negligence and other violations in which the complaint gave the Company sufficient notice within the pleading of the injuries, damages, and the allegations against the Company.

## III.   STATEMENT OF THE CASE

On March 15, 2013 the Appellant filed her complaint.  On March 22, 2013 the Appellees filed a motion to dismiss for failure to state a claim.  On April 25, 2013 Appellant filed a motion to Amend Complaint.  The Court denied the Appellant's motion to Amend Complaint, and grants the Appellees motion to dismiss ordering the Appellant to file a 12 page complaint.  On May 6, 2013 the Appellant files its Second Motion to Amend Complaint under the Court's order to limit the page numbers to 12 pages.  May 9, 2013 the District Court granted the Appellant's motion.  On May 23, 2013 the Appellee filed a motion to dismiss for

failure to state a claim.  On June 3, 2013 the Appellant filed a motion in opposition to the Appellees motion to dismiss.  On July 10, 2013 the Appellees filed a motion to Compel, and On July 18, 2013 the Appellant also filed a motion to compel discovery answers.  On July 18, 2013 the Appellant also requested a motion to extend the filing of expert opinions.  July 22, 2013 the Appellants filed a motion in opposition to the Appellees motion to compel.  The Court on July 24, 2013 granted the Appellees motion to compel, and granted attorney fees.  July 25, 2013 the Appellant filed its second motion to compel.  On July 29, 2013 the Appellant filed a motion for reconsideration for attorney fees and to reverse the court's ruling of granting the Appellees motion to compel, by showing that the Appellant had tried to work out the issues of discovery our with the Appellees.

On August 8, 2013 the Court dismissed the order granting the Appellees sanctions for attorney fees, and also dismissed Appellant's complaint in its entirety.  Appellant filed Rule 59, 60, and 62 motions on September 5, 2013, the Appellees responded on September 23, 2013.  The Court denied the Appellant's motions for Rule 59, 60, and 62 on October 1, 2013.  The Appellant filed a notice of Appeal on October 30, 2013.

## IV.    STATEMENT OF THE FACTS
## FACTCUAL ALLEGATIONS

Appellant was prescribed and ingested DEXILANT as prescribed during a period beginning on September 8, 2010 through September 28, 2010.  On or shortly after September 2010, Appellant who was a fertile and healthy female was examined and it was found she had a blockage of her fallopian tubes, and other impaired fertility medical issues, according to her treating physicians' opinion.

Upon visiting her family, doctor ("Gynecological Doctor") to investigate the source of her issues with infertility, Appellant was referred to a specialist ("Fertility Specialist") who conducted test.  After reviewing the results, the Fertility Specialist diagnosed Appellant with impaired fertility, with a blockage of her fallopian tubes stemming from adverse reaction to medication, and DEXILANT is listed, and Appellant also saw an allergy specialist which also list DEXILANT as a cause of the impaired fertility.

Appellees, directly or through its agent, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted, and sold DEXILANT, for the treatment of heartburn, GERD, acid reflux, ulcers and inflammation of the esophagus, and other uses.

Appellees manufacturing of DEXILANT uses ingredients which have been found to cause uterine deformities, as well as fibroids, which can cause blockage of fallopian tubes.

5

In 1993, Polysorbate 80 an ingredient in the compound of DEXILANT was found by researchers to cause in lab test accelerated maturation, prolonged the estrous cycle, decreased the weight of the uterus and ovaries, and caused damage to the lining of the uterus indicative of chronic estrogenic stimulation; further the test subject ovaries were also damaged, with degenerative follicles and no corpora lutes (a mass of progesterone-secreting endocrine tissue that forms immediately after ovulation); and the test results led to deformities to the ovary which lead to infertility; and also in the compound of DEXILANT is titanium dioxide which is also in the shell casing that has a level 3 reproductive toxicity rating, and the Appellees failed to provide this information.

In regards to Poloysorbate 80, in 2007, the Virginia Legislature attempted to cause a product which used Polysorbate 80 as one of its ingredients to be exempt from the "strict liability" standard for pharmaceutical drugs in Virginia by offering the an amendment.[1]

Other studies before 2010 found that ingredients of DEXILANT cause "Reproductive Toxicity": a. Titanium Dioxide is a suspected reproductive toxicant and exposure to it has the potential to negatively affect the human reproductive

---

[1] "The Commonwealth waives immunity from tortuous liability if a female who is inoculates with the HPC {vaccine that had the ingredient of Polysorbate 80} becomes incapable of naturally conceiving a healthy child carried to live birth or experiences impaired fertility as a result of the HPV vaccine."

system, by having effects on the female reproductive systems which can include such things as menstrual problems, altered sexual behavior, infertility, altered puberty onset, altered length of pregnancy, lactation problems, altered menopause onset and pregnancy outcome; b. Listed ingredients of DEXILANT include two known ingredients which cause impaired fertility: sugar spheres, magnesium carbonate, sucrose, low-substituted hydroxypropyl cellulose, titanium dioxide, hydroxypropyl cellulose, hypromellose 2910, talc, methacrylic acid copolymers, polyethylene glycol 8000, triethyl citrate, polysorbate 80, and colloidal silicon dioxide, further, the capsule shell is made of hypromellose, carrageenan and potassium chloride, and based on the capsule shell color, blue contains FD&C Blue No. 2 aluminum lake; gray contains black ferric oxide; and both contain titanium dioxide.

The DEXILANT given to Plaintiff Monica L. Ball was of the blue color, so it had titanium dioxide a known impairment of fertility in the capsule shell as well, this was not disclosed by Appellees.

Appellant used DEXILANT as prescribed and in a foreseeable manner, and after taking DEXILANT for from September 8 2010 until September 28, 2010, Plaintiff suffered impaired fertility as well as injury to her fallopian tubes requiring fertility specialist treatment stemming from the injuries incurred on or about

September 2010, just as the lab results had found in 1993, and subsequent lab testing as well.

Appellant would not have used DEXILANT had Appellees properly disclosed the risks of impaired fertility associated with its use that Appellees should have known or that were well known to Defendants during the relevant period.

## V.    SUMMARY OF ARGUMENT

The Appellant has brought this appeal seeking relief from the dismissal of her claim under a 12(b)(6) motion, and the denial of Amending her complaint after there was material evidence uncovered.

## VI.    ARGUMENT

**Summary of Review**

The District Court in the instant case dismissed Appellant's Amended Complaint for failure to state a claim for which relief could be granted.  The Fourth Circuit Court of Appeals  reviews de novo the district court's dismissal of a claim for failure to state a claim on which relief may be granted. *Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 248(4th Cir. 2005),CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 51 (4th Cir. 2011);* the Appellant Court

reviews de novo a dismissal under Rule 12(b) (6). *Burbach Broad Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)* . This Court reviews denial of a motion for reconsideration under Rule 60(b) for abuse of discretion. *Hevman v. M.L. Marketing Co., 116 F.3d 91 (4th Cir.1997).*

### (i) Discussion of the Issues

**I.     Whether the District Court erred when it denied the Appellant's motion to Amend Complaint when material evidence from another lawsuit against the Appellees by the government revealed evidence that the Appellees had acted in bad faith in arguing for dismissal of fraud, and punitive damages claims of the Appellant?**

Appellees argued that fraud be dismissed from the Appellant's complaint at the 12(b)(6) motion due to the case of *American Chiropractic Association, Inc. v. Trigon. Healthcare at 367 F 3d 212. Appx. pgs. 315.*

The Court after this limited the Appellant's complaint to twelve pages, and dismissed key claims of the Appellant's including punitive damages, fraud, and the Court pressed the Appellant's counsel on the expressed warranty claim as well. Appx. pg 385-397.   However, the Appellees had knowledge at this point that there were allegations of fraud in the Appellant's complaint that were consistent with allegations from another complaint stemming from a whistleblowers claim.  Appx. 417.

Plaintiff's response to Court's Order provided supplemental information in regards to the matter in dispute; Appx. 414.

As a matter of fact part of the claims against the Takeda in the *United States of America at. el. ex. rel. Helen Ge, M.D. v. Takeda Pharmaceuticals at. el, 1:11-cv-10343-FD*S, is that the Appellees had marketed the drug Dexilant under false pretenses. The Allegations state that Takeda marketed it prescription drug Kapidex a proton pump inhibitor used to treat various gastric condition for off-lable uses. Further, another of the identified marketing practices was in the Helen Ge case is that Takeda's practiced of marketing high doses of Kapidex/Dexilant for the treatment of conditions for which only a lower dose has been approved by the FDA. Appx. 553.

Further, the FDA had refused to approve 60mg for the treatment of GERD, the condition of the Appellant, and had only approved 30mg for the treatment of GERD.[2]

---

[2] *"Realtor alleges that although Takeda sought government approval for higher dosages of Kapidex (Dexilant), including a 60mg dose to treat GERD, the Food and Drug Administration rejected this request." App. 417* In addition, the Realtor's Complaint states: *In particular, Relator alleges that 60 mg doses of Kapidex have been approved by the FDA only for the treatment of the active condition of erosive esophagitis (EE). However, Kapidex has been approved by the FDA at a lower 30 mg dose to treat the more common condition of gastroesophogeal reflux disease*

So the Appellees moved for the dismissal of fraud and punitive damages claims of the Appellant at the 12(b)(6) motion with the knowledge that there were allegations of misleading the public as well as physicians in the marketing, and in the approval of the drug Dexilant/Kapidex. Appx. 315

In addition to this information the Appellees had Dr. Ge in the whistleblower claim make allegations of Takeda misleading the FDA on the product Dexilant.

Dr. Ge also stated that there were various cardio vascular injuries which were not reported, and which should have been the package inserts.  This is important due to the fact the Appellant due to the fact package inserts and the Physicians' Desk Reference are items which physicians use.  With Takeda placing incorrect information purposely and misleading physicians it amounts to fraud.

Further, Dr. Ge stated that Takeda failed to provide needed information on drug interactions with Dexilant as well.[3]  Further, the Appellant died three times

_____

*(GERD), as well as for the maintenance of already "healed" cases of EE. Relator alleges that Takeda has provided doctors with samples of Kapidex exclusively in 60  mg doses, irrespective whether such physicians treat active cases of EE. As Relator further alleges, by this sampling practice, Takeda improperly implies that a 60 mg dose of Kapidex is the only available dosage of that drug, thereby causing doctors to prescribe 60 mg doses for unapproved conditions. App. 553*

[3] *126. Notwithstanding this large number of Plavix and Coumadin/Warfarin related drug interactions, and in particular the large number of bleeding events, Takeda does not reference them in either the Prevacid or Dexilant labels.*

while in the drug induced coma due to heart failure. App. 320, ln 21. With the

Appellees according to the allegations of Dr. Ge not placing information in the

package insert of the congestive heart failure was not placed in the information to

the physicians.  After this limited complaint was filed the Appellees moved to

dismiss the Appellant's complaint with the knowledge of the fact that there had

been allegations of fraud in regards to a material issue directly concerning the

claims of the Appellant in reference to the 60mg given to her for GERD as

opposed to the FDA approved 30mg to treat GERD.

---

*Furthermore, while Dr. Ge worked at Takeda, there were many Cerebrovascular Accident events reported as drug interactions between Prevacid and Plavix, but Takeda denied the causal relationship.*

***(v) Multiple Serious or Fatal Adverse Events Regarding Prevacid/Dexilant Reported to the FDA AERS Do Not Appear on Their Package Inserts***

*127. Despite charts displaying the number of the following conditions reported as adverse events to the FDA's AERS, none of them have been added to the Prevacid or Dexilant package inserts:*

*a. Acute Renal/Kidney Failure (472 Acute Kidney Failures, 520 Renal Failure Acute, 168 Renal Failure Chronic and 51 Azotemias; b. Congestive Heart Failure (849 Cardiac Failure Congestive, 133 Cardiac Failure, 6 Cardiac Failure Acute, 8 Cardiac Failure Chronic, 42 Congestive Cardiomyopathy, 20 Left Ventricular Failure and 134 Pulmonary Congestion);*

*c. Liver Failure (226 Hepatic Failure, 51 Hepatic Comas; d. Sudden Death, many of which Dr. Ge suspects are arrhythmia events caused by Prevacid/Dexilant's interaction with Digoxin (374 Sudden Deaths, 15 Sudden Death Unexplained; e. Rhabdomyolysis suffered by patients also taking Statins, a large number considering how rare rhabdomyolysis is (179 rhabdomyolysis event be patients taking Zocor or Baycol); f. Deep Vein Thrombosis by patients taking Avonex (374 Deep Vein Thrombosis, 363 Pulmonary Embolism, and 16 Pulmonary Thrombosis);*

*g. Miscellaneous adverse events.  See Appendix pages 475-476.*

12

**A.    NOTICE-OF FRUDULANT ACTS LATER DISCOVERED IS
SUFFICIENT TO ALLOW A REQUEST AND A GRANTING OF A
MOTION TO AMENDMEND THE PLEADING PRINCIPLES TO
PROVIDE RELIEF IN REGARDS TO A MATERIAL FACT TO
DEMONSTRATE APPELLANT'S CLAIMS STEMMING FROM A
CAUSE OF ACTION THAT WAS DISMISSED WITH PREJUDICE
IN CIRCUMSTANCES OF BAD FAITH OF THE APPELLEES**

**Governing Standard**

Rule 15(a) of the Federal Rules of Civil Procedure provides in relevant part,
that "a party may amend the party's pleading only by leave of court or by written
consent of the adverse party; and leave shall be freely given when justice so
requires." The case law makes clear that Rule 15(a) applies to the filing of
amended answers. *See McIndoo v. Burnett,* 494 F.2d 1311, 1313 (8th Cir.1974);
*Groninger v. Davison,* 364 F.2d 638, 640 (8th Cir.1966). A court may deny a
**motion** to **amend** when the moving party "is guilty of undue delay, bad faith,
dilatory motive, or if permission to amend would unduly prejudice the opposing
party." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 224 (8th
Cir.1994).

In the instant case the bad faith was upon the Appellees that argued for the
Appellant's cause of action of fraud and expressed warranty claims to be dismissed
with prejudice, and for which the court granted the Appellees request for dismissal
of those causes of action in bad faith.   Appellant's motion to amend due to the

discovery of fraud and misrepresentation and the marketing of 60mg from

treatment of the FDA approval of 30mg for GERD were legitimate, reasonable,

and  sound legal reasoning for the Appellant's Second Motion to Amend

Complaint to be granted.

**B. Discussion**

The Supreme Court changed the leading standard in its 2007 decision *Bell*

*Atlantic Corp. v. Twombly*. *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 555

(2007).  In reaching its decision in *Twombly*, the Court provided a handful of

phrases to indicate what this new standard entailed.38 38. *See supra* note 7 and

accompanying text. The Court noted that the plaintiff's recovery must be

"plausible," but not necessarily probable, to survive a motion to dismiss.39

*Twombly*, 550 U.S. at 556. Moreover, "[f]actual allegations must be enough to

raise a right to relief above the speculative level."40 *Id.* at 555.

In early 2009, the Court heard *Iqbal*. *Javaid Iqbal* claimed that highranking

government officials were personally liable for the conditions of his confinement

after the September 11, 2001 terrorist attacks. He filed constitutional violations.

*See generally* 42 U.S.C. § 1983 (2006) (balancing qualified-immunity principles

with the right to recover damages from federal officials); *Bivens v. Six Unknown*

*Named Agents of Fed.Bureau of Narcotics, 403 U.S. 388 (1971) (allowing a*

*personal cause of action for damages against federal officials); BLACK'S LAW DICTIONARY 191 (9th ed. 2009) (defining a "Bivensaction" by analogy to a claim under 42 U.S.C. § 1983).*   Appellant Ball claims Takeda and its agents caused her injuries.

## C. Recent developments in rule 15

Rule 15 allows a party to amend a pleading—even a pleading that is vulnerable to a 12(b)(6) dismissal for failure to meet the federal pleading standard. In other words, Rule 15 provides a second chance at success for claims that a court might otherwise reject after *Iqbal*. A party can amend either as a matter of course, or with permission from the opposition or leave of the court. FED. R. CIV. P. 15

### 1.    Amending with Leave of the Court

A party can also amend with leave of the court. After the expiration of Rule 15(a)(1)'s twenty-one-day limitation period, a party may amend its pleading only with the opposing party's written consent or the court's leave. The rule instructs that a "court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

With this leeway, courts grant leave even, for example, after the response period described in Rule 15(a)(1) ends or when the evidence that emerges during the trial does not coincide with the pleading. FED. R. CIV. P. 15(b) (explaining that a party can amend during trial so that the pleading conforms to the proof presented at trial). Like Rule 15(a), 15(b) gives great discretion to the court: "The court should freely permit an amendment [during trial] when doing so will aid in presenting the [action's] merits . . . ." *Id.* 15(b)(1).

The rule has two overall mandates that judges must follow: (1) liberally give leave, and (2) use leave as a tool for justice. Factors that courts use to determine whether justice requires leave to amend include bad faith, prejudice to the opposing party, the impact on timing in light of the requirement for expeditious trials, and the futility of the amendment. *Foman v. Davis*, 371 U.S. 178, at 182 (1962) (identifying "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" as reasons to deny leave to amend).

Courts will also grant leave to amend for amendment through the granting of other rules such as rule 59(e) and Rule 60, especially when bad faith has affected final judgments. *See, e.g.*, FED. R. CIV. P. 59(e) (describing the amount of time in

which a party must file a motion to alter or amend a judgment); *id.* 60(b) (allowing a party to file a motion for relief from a final judgment or order); *Clardy v. Duke Univ., 299 F.2d 368, 369–70 (4th Cir. 1962)* ("If it should be held that plaintiff could amend without leave after . . . the granting of summary judgment against him, the effect would be to clothe a litigant with the power . . . to reopen a case and . . . set aside a judgment . . . .").

In its Motion, Appellant sought to amend her complaint by submitting an additional counts that had been previously demised with prejudice even though the Appellees knew of the allegations of misrepresentation of the 60mg to be used to treat GERD, for which the Appellant had, and or which the Appellant had been given 60mg to treat her symptoms of GERD, and for which the Appellant suffered two different injuries one of infertility, which had been found in testing of the ingredients of Dexilant, and that of Steven's Johnson Syndrome which was not listed in the Physician Desk Reference, which is used under the standards of care by physicians when prescribing medications.

In Appellant's Complaint of March 2013 she listed fraud and expressed warranty claims, but the court dismissed those claims with prejudice stating that the Appellant had not enough evidence plead to survive a 12(b)(6) motion.

During discovery, the Appellant asked for evidence and admission concerning information of the 60 mg and 30 mg marketing of the Appellees to physicians. Then when the information was taken out from under a protective order in another matter, the Appellant found the information, and immediately sought to amend her complaint.

The allegations from two employees of Takeda had provide evidence which indicated that in Takeda had misrepresented to physicians that the 60mg had been approved by the FDA to treat GERD, when the FDA had only approved 30mg for treatment of GERD. The Appellant suffered forms of infertility, and well as a second injury of the life threatening Stevens Johnson Syndrome for which she was in a medically induced coma for weeks.

Based on this evidence adduced from the other case during discovery, Appellant contends that Appellees knowingly and intentionally presented physicians with misleading information, as well as the FDA in getting approval for the drug Dexilant, and the Appellees had fraudulently acted, as well as had covered up their misrepresentations.

Thus, the Appellant sought leave of Court to add by interlineation the causes of actions of after-acquired evidence. The Appellant demonstrated good cause that warrants granting of the Motion to Amend her claim, and has shown ample proof

18

of bad faith as well as allegations of fraudulent activity which is sufficient to survive a 12(b)(6) motion, for the allegations have substance and documented evidence.  The Appellant filed the Motion immediately after discovering the evidence supporting the amendment. The Appellant had also attempted to get the previous case information from the Appellees, but was met with opposition during discovery, for which the Appellant attempted to obtain a motion to compel, but was denied not once but twice.

Further, due to the Appellees bad faith, as well as the time period for which the trial had been set much further in the further, there would not have been any prejudice to the Appellees.  Because the additional counts were dismissed, and at the time the Appellant did not have the needed information, but once the information was found the Appellant immediately sought to Amend the Complaint, it is reasonable to have allowed the Appellant to amend her complaint.  The reason being the Appellant acted promptly after discovering the evidence, the District Court should have granted the Appellant leave to amend her answer.

## II.    Whether the District Court erred when it dismissed two complaints stating they failed to state a claim for which relief could be granted.

## A.    NOTICE-PLEADING PRINCIPLES RELIEVED PLAINTIFF OF PLEADING FACTS TO DEMONSTRATE HER CLAIMS

The Supreme Court had decided and firmly established two fundamental pleading rules that bear decisively on the instant case. Initially, a complaint must allege facts, not merely conclusions, that show the plaintiff is entitled to relief under the governing substantive law. Secondly, it is the facts alleged, not alleged facts that the plaintiff might later prove, that must support the claim to relief.

The Appellant in 3:13-cv-168 submitted a complaint that was replete with facts and evidence in which the Complaint listed 1) failure to warn; 2) failure to provide precautions; 3) Breach of Implied Warranty; 4) Breach of Warranty; 5) Negligence; 6) Negligence Regarding Physicians' Standards of Care Concerning Stevens Johnson Syndrome; 7) fraud; and 8) punitive damages. App. pg 12-45.

Then the Appellant offered the District Court a Proposed First Amended Complaint App. pg 242-304. The Introduction, the Jurisdictional Statement, and Facts were 24 pages alone. Further, the Proposed Complaint had the following claims listed in a factual pleading: 1) Failure to Warn; 2) Failure to Provide Precautions; 3) Negligence; 4) Negligence Failure to Adequately Warn; 5) Negligence Per Se; 6) Negligence Misrepresentation; 7) Breach of Express Warranty; 8) Breach of Implied Warranty for Particular Purpose; 9) Breach of Implied Warranty of Merchantability; 10) Negligent Products Liability: Defective Design of Labeling and Warning; 11) Negligent Products Liability: Manufacturing

20

Defect; 12) Negligent Product Liability Failure to Warn; 13) Fraudulent

Concealment; 14) Violations of Virginia Consumer Protection Act: Prohibited

Practices Section 59.1-200 (Consumer Protection Law).

Appellant's central contention is that "Rule 8 Requires Pleading of Facts to

give the Appellees notice, and that the fact that the notice given is more than a

short plain statement, should not hinder the Appellant from moving forward in her

serious claims presented.

Appellant's pleading were more than sufficient and in line with the Supreme

Court's long-standing notice-pleading decisions, which holds that plaintiffs need

only provide the short statement required by under <u>Federal Rule of Civil Procedure</u>

<u>8(a)</u> to place defendants on notice of the nature of the claims against them.

The Appellant provided ample notice and pleading replete with facts

concerning the injuries she sustained from the Appellees various failures. In the

Appellant providing the facts and evidence that might ultimately be used to prove

those claims she satisfied the requirements of Federal Rule 8. The Appellant even

provided pleadings of facts to support her claims.

First the Appellant was told she submitted too much in regards to her claims

presented in her Complaints, then she was told that she did not have enough to

state a claim. In all of this the Appellees were getting sufficient notice of the claims against them in compliance with Rule 8. In Rule 8(a), "the drafters of the Federal Rules substituted the word 'claim' for 'cause of action,' dropped the requirement that the complaint allege 'facts,' and expanded discovery procedures," to ensure that a claim may be simply stated with the critical facts to be developed in discovery. *Hodgson v. Virginia Baptist Hosp.,* 482 F.2d 821, 823 (4th Cir. 1977). "Any need to plead facts that, if true, establish each element of a 'cause of action' was abolished by the Rules of Civil Procedure in 1938." *Sanjuan v Am. Bd. of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994) (Easterbrook, J.). Simply put: "The federal rules replaced fact pleading with notice pleading." *Thomson v. Washington,* 362 F.3d 969, 970 (7th Cir. 2004) (Posner, J.); *see also Christopher M. Fairman, Heightened Pleading*, *81 Tex. L. R. 551, 556 (2002).*

"Complaints need not plead facts …. It is enough if the complaint puts the defendants on notice of the claim and that some set of facts could be presented that would give rise to a right to relief." Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997)."  The Appellant's complaints were more than sufficient.

## B. The Supreme Court Held That Plaintiffs Are Not Required To Plead And Abundant Amount Of Facts Establishing Their Claims

The Supreme Court's decision in *Nat'l Wildlife Fed'n*, drew a sharp distinction between pleading a claim, when general or conclusory allegations

suffice, and proving it - when facts are required. *National Wildlife Federation* and *Defenders of Wildlife* both held that to survive a Rule 56 motion for summary judgment the plaintiff must present specific facts supporting its claim. The, the Supreme Court also emphasized, that the requirement in a Rule 56 motion was in direct contrast to the requirements of 12(b)(6), that general allegations suffice, with any specific facts that might be needed to support the claim *presumed. See* <u>Nat'l Wildlife Fed'n</u>, 497 U.S. at 889 (citing <u>Conley</u>, 355 U.S. at 45-46).

Clearly, a plaintiff is not required to *plead* the facts that will later be required either to survive a summary judgment motion, or to prevail at trial.

The Supreme Court has held the following: "We have held that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. 555, at 561 (citations omitted). The District Court dismissed petitioners' claim that the pleading stage pursuant to Federal Rule of Civil Procedure 12(b)(6), so their complaint must be sustained if relief could be granted "*under any set of facts* that could be proved consistent with the allegations." Hishon *v. King & Spalding,* 467 U.S. *69,* 73 *(1984),* NOW, *Inc. v. Schiedler,* 510 U.S. *249,* 256 *(1994) .*

23

Thus, the Appellant presented ample facts in regards to the allegation concerning her injuries, and the requirement to place the Appellees on notice. Where a complaint states a potentially valid claim, the question is not whether facts necessary to support that claim have been pleaded, but whether "any set of facts" - whether or not specifically pleaded - might ultimately be proved that would entitle the plaintiff to relief. The plaintiff need not allege a specific fact for each element of the claim. *In re Tower Air*, 416 F.3d at 237.

However, the Plaintiff provided enough facts in her initial complaint, and also provided enough facts under the minimum standards in her court ordered limited 12 page complaint.

**C.    Case Law Shows That Appellant Could Amend Complaint even at the dismissal of her complaint under the circumstances of this matter.**

It seems as though the Supreme Court's decision in *Ashcroft v. Iqbal* has increased the fourth circuit's likelihood in having district court judges dismiss a case for failure to state a claim. *Ashcroft v. Iqbal,556 U.S. 662, 678 (2009)* The Federal Rules of Civil Procedure 8 and 15, are foundations for the argument that the ruling in Iqbal not only both rules, diverge, but the ruling in *Iqbal* also discourages litigation by effectively raising the federal pleading standard of Rule 8, yet Rule 15 encourages litigation by liberally allowing a party to amend pleadings. *Ashcroft v. Iqbal,556 U.S. 662, 678 (2009).*

24

The Appellant has been caught in the situation where she was blamed for stating too much, and then for stating too little in her claims. Further the *Iqbal* changes to Rule 8 should actually enhance Federal Rule of Civil Procedure 15's ability to provide litigants with a method to challenge dismissal and maintain access to the courts. *Id.*

The Court stated that the Appellant should have had knowledge that the Court expenses would be great in its amount.  Therefore, due to the divergence between Rule 8 and Rule 15 since *Iqbal's* aim of restricting litigation, has done the opposite and has actually encouraged litigation, but at the same time, however, *Iqbal* has increased the time and cost associated with bringing a claim in federal court.  *Id.*

The District Court stated that several of the Appellant's after dismissal motions were moot due to the fact the District Court had decided to dismiss the Appellants claims for failing to state claims in which relief could be granted.

Under rule rule 15 and also under rules 60, and 59, and 62 the Appellant could have been granted leave to amend her complaint due to the fact that after discovered evidence was found, and also the fact the Appellees withheld discovery

responses stating they were going to seek a protective order before giving the

information to the Appellant.[4]

_____

[4] *REQUEST NO. 1: Any and all documents submitted to the FDA in connection with efforts to obtain FDA approval of any Takeda Dexilant Products or the labeling for same.*

*OBJECTION TO REQUEST NO. 1:    No objection.*

*RESPONSE TO REQUEST NO. 1: Takeda will produce the New Drug Application ("NDA") file for Dexilant in accordance with Federal Rule of Civil Procedure 34 after the Court's entry of an appropriate protective order.*

*Other responses also stated that the Appellees were going to seek a protective Order but they did not file for one.*

*RESPONSE TO REQUEST NO. 3: Subject to and without waiving these objections, Takeda will produce the New Drug Application ("NDA") file for Dexilant in accordance with Federal Rule of Civil Procedure 34 after the Court's entry of an appropriate protective order.*

*PLEASE PROVIDE THE INFORMATION REQUESTED OR WE WILL FILE A MOTION TO COMPEL*

*OBJECTION TO REQUEST NO. 7: Takeda objects to this Request as overly broad, unduly burdensome and unlikely to lead to the discovery of admissible evidence or evidence relevant to the claims or issues as framed by the pleadings, to the extent that it seeks disclosure of documents or information about injuries other than Stevens-Johnson syndrome/fertility impairment. Notwithstanding this objection, Takeda is producing the New Drug Application ("NDA") file for Dexilant in accordance with Federal Rule of Civil Procedure 34 after the Court's entry of an appropriate protective order.*

*OBJECTION TO REQUEST NO. 8: Takeda objects to this Request as overly broad, unduly burdensome and unlikely to lead to the discovery of admissible evidence or evidence relevant to the claims or issues as framed by the pleadings, to the extent that it seeks disclosure of documents or information about injuries other than Stevens-Johnson syndrome/fertility impairment. Notwithstanding this objection, Takeda is producing the New Drug Application ("NDA") file for Dexilant in accordance with Federal Rule of Civil Procedure 34 after the Court's entry of an appropriate protective order.*

Further, the fact that the after discovered information shows that the Appellees purposely held up answering the Appellant's discovery, and then also withheld information for the Court in regards to the product Dexilant and its ingredients. The Ingredients of Dexilant have been known to cause uterus deformities when used in large quantities in lab test, as well as Dexilant had caused bone injuries in prolonged use, which was not relayed to the consumers.

**III.    Whether the District Court erred when it limited the Appellant's Amended Complaint to only 12 pages, and then dismissed the Appellant's First Amended complaint for failure to state a claim for which relief can be granted when the Appellant found after discovered evidence, which supported prior causes of actions the District Court dismissed with prejudice?**

**A.    Rule 8. General Rules of Pleading**

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. Rule 8 permits the filing of a prolix complaint so long as the complaint gives the defendant fair notice of the claim asserted against it. Courts have held that Rule 8 imposes an independent limit on the length of a complaint regardless of whether the complaint otherwise affords the

27

defendant "fair notice" of the claims asserted against it. The latter view is more faithful to the text and purpose of Rule 8 and better effectuates the purpose.

Further, the Pleading are allowed to be plead to do justice in regards to the claims that are to be presented in reference to the injuries the person has incurred.

Rule 8. (e) CONSTRUING PLEADINGS. Pleadings must be construed so as to do justice. To do justice is a requirement found tin Rule 8.  The Court limited the amount of pages in regards to a woman who has suffered infertility stemming from medication, which was supposed to have listed the instances of lab test that showed infertility in the lab subjects so that users could have fair notice.  Lab subjects which received large dosages of the ingredients of the Dexilant product had deformities of the uterus, the same injury the Appellant Monica Ball suffers from due to receiving the increased 60mg dosage of Dexilant for an a treatment, which required 30mg.

The Appellant who should have received 30mg dosages for her GERD treatment, received 60 mg dosages daily due to the marketing of the Appellees to physicians who were told by the Appellees it was safe to subscribe the larger dosage of 60mg for GERD.  Further, the FDA had only approved 30mg for the treatment of GERD.  In the Physicians' Desk Reference and on the package inserts the Appellee misrepresent that the 60mg could be used for GERD without any

28

difference from the 30mg usage.  The Appellees had knowledge of the possibility of both uterus deformities from high dosages of ingredients of Dexilant.

Appellant was in a drug induced coma for weeks stemming from the infliction of Steven Johnson Syndrome, and died three separate times.  The Appellees also had knowledge of high dosages of Dexilant was also associated with Stevens Johnson Syndrome, which the Appellant contracted, and the information of Stevens Johnson was not listed in the Physicians' Desk Reference, a tool used by physicians in prescribing medications and finding the side-effects to present to patients.

In the interest of justice the complaint should not have been limited to a 12 page number in regards to the serious claims of the Appellant.  However, the District Court erred in forcing the Appellant to have a limited amount of space to list her claims.  Further, when the after discovered evidence was found the District Court further erred in not allowing the Appellant to amend her complaint under the totality of the circumstances.  It is a factual issue that there were misrepresentations made by Appellees and further there were issue of non-disclosure, and discovery violations on the part of the Appellees on material facts surrounding the Dexilant 60mg marketed to physicians for the treatment of the 30mg GERD in which the Appellant suffered from.

**IV.    Whether the District Court erred when it denied the Appellant's motion to extend discovery due to the after discovered evidence, and the fact Appellees hid material information concerning Appellant's claims.**

**A.    Rule 16(b).**

Rule 16(b) of the Federal Rules of Civil Procedure provides: "Except in categories of actions exempted by local rule, the district judge ... must issue a scheduling order after receiving the parties' report under Rule 26(f) ... The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed.R.Civ.P. 16(b).

While rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings generally, rule 16 governs amendments to scheduling orders. *See Bylin v. Billings, 568 F.3d 1224, 1230 (10th Cir.2009)(citing Fed.R.Civ.P. 16(b)). Rule 16(b)(4)* states: "A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).

The Advisory Committee Notes to rule 16 explain: "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test." Advisory Committee Notes to 1983 Amendment to Fed.R.Civ.P. 16. Rule 16(b) "focuses on the diligence of the party

seeking leave to modify the scheduling order to permit the proposed amendment."
*Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, No. Civ 02–1146, 2007 WL
2296955, at *1–2, 2007 U.S. Dist. LEXIS 56492, at (D.N.M. June 5,
2007)(Browning, J.). "Properly construed, 'good cause' means that scheduling
deadlines cannot be met despite a party's diligent efforts." *Id.*

The instant case required discovery request to be given to the Appellant so
that the Appellant could provide the information to the Appellant's experts for the
FDA as well, as for the treating physicians who had stated that Dexilant was
related to the injuries and allergic reactions to the Appellant regarding her
infertility complications.  Appx. 1162-1166 This information was also sent in
discovery disclosures to the Appellees on August 7, 2013 just a day before the
Court dismissed the case.  Kimberly George, M.D. an allergy specialist that is the
Appellant's treating physician stated that Dexilant was one of the allergic
precautions for the Appellant.[5]

---

[5] "I have been caring for Ms. Monica Ball since February of 2012 *for
allergies.  She presented to me several months after surviving a severe episode of
what sounds like sepsis as well as Stevens Johnson Syndrome.  She had been on
several medications at or around that time including Dexilant, Amoxicilin and
Cipro, but had also had a colonoscopy and EGD a few days before becoming
severely ill.  Her main question to me was what drug might have caused her
reaction and which drugs could she safely take in the future?  There are several
"unknowns" regarding SJS and a variety of medications have been implicated*

Due to the fact there was additional information found in the Dr. Ge case versus Takeda, the Appellees had fully had the information concerning the material issues in which the Appellant suffered, however, when the Appellant for good cause asked the District Court to extend the time to submit the expert opinions, the District Court refused to grant the Appellant's motion to extend the time to file the expert's opinion even with the information of the material issues uncovered in the other case. The Appellees had supplied insufficient answers to Admissions, concerning the medication Dexilant, and said they were going to seek a protective order, but never did so. Appx. 786, 796, Further, the Dexilant product has caused numerous injuries in regards to osteoporosis. Appx. 796. The Appellees had also refused to give documentation related to other litigated actions during discovery, as well as stated that they were going to obtain a protective order. Appx. 46.[6]

---

*although a few seem to be more likely including.....I would recommend that she specifically continue to avoid Dexilant, penicillins, and possibly cephalosporin." Appx. 1168 Par 1 and 2.*

[6] *The FDA only approved 60 mg doses of Kapidex/Dexilant only for the treatment of the active condition of erosive esophagitis (EE), but Kapidex/Dexilant had only been approved by the FDA at a lower 30 mg dose to treat the more common condition of gastroesophageal refiux disease (GERD) such as Ms. Monica Ball had, as well as for the maintenance of already "healed" cases of EE, yet physicians such the one that prescribed Ms. Bail the 60mg for GERD was given samples of Kapidex/Dexilant exclusively in 60 mg doses without regard of the patient being treated for EE or GERD, thus causing unapproved treatment in Monica Balls case with 60mg of Kapidex/Dexilant.*

**V.     Whether the District Court erred when it dismissed with prejudice the matter of first impression concerning the failure to warn due to the Physicians' standard of care of not having to warn patients of side-effects which affect less than 2% of the population, and the standard of care of the pharmaceutical company in providing warnings to the consumers of their products.**

**A.     FORD MOTOR COMPANY v. Walter E. BOOMER, Administrator. Honeywell International, Inc. v. Walter E. Boomer, Administrator. Record Nos. 120283, 120299.**

The Supreme Court in Virginia has held that "an insufficient warning is in legal effect no warning." *McClanahan v. California Spray–Chemical Corp., 194 Va. 842, 853–54, 75 S.E.2d 712, 718 (1953)(Ford Motor Company v. Walter E. Boomer at el. Nos. 12083, 120299 (internal quotation marks omitted).*

Virginia law concerning products liability has the ability to determine if a product is under a strict liability status, or under a status of negligence. Virginia has chosen the negligence standard. However new case Virginia Case law has specifically stated in a situation where a warning was eventually provided, just as

---

*OBJECTION: Takeda objects to this Request as vague, ambiguous and unintelligible as phrased.*
*RESPONSE: Subject to and without waiving these objections, denied.*
*The denial is not based in the truth.*
*Then the OBJECTION can be cured. This "vagueness" may be remedied by simply specifying which meaning Defendants are adopting, and then proceeding to answer the RFA. Appx.pg. 800.*

33

this instant case, that the plaintiff still may not have read the warning, thus the Virginia Court held: An insufficient warning acts the same as no warning.

The mere fact that the physician does not have to provide a warning for issues that affect less than 2% of the population, and the fact that the pharmaceutical drug company Appellee has a duty to warn causes a conflict with the case law that has been established in Virginia.  Further, to cloud this issue regarding warning, the Appellee mislead the physicians and consumers in reference to the fertility toxicity of ingredients of the Dexilant product, thus cause two separate issues with the failure warn.

Generally the learned intermediary is the standard in matters of prescriptions drugs, but with allegations of the Appellees providing misleading information in its warnings concerning ingredients of the product Dexilant, coupled with the fact that Stevens Johnson Syndrome affects less than 2% of the population stemming from taking medications, therefore, the physicians standard of care does not require a warning, however, the manufacturer owes a duty of care to the consumer of their product in those instances.

In the Virginia products liability case of  *"Honeywell International Inc.* the Virginia Court stated that Mesothelioma plaintiffs must show asbestos exposure from a defendant's product sufficient to give rise to the disease, the Virginia

Supreme Court held Jan. 10 (*Honeywell International Inc. v. Walter E. Boomer, administrator*, No. 120299, Va. Sup.).

The Virginia court rejected the strict "but-for" causation standard championed by the defendants, as well as substantial contributing factor causation. Instead, the court said the "multiple sufficient cause" analysis in Restatement (Third) of Torts Sections 26 and 27 applies in mesothelioma cases. Under that standard, each harm must be a factual cause of the injury, even where multiple harms led to the injury.

**Substantial Factor Causation**

After a trial against the two remaining defendants, a jury awarded the plaintiffs $282,675.69, consisting of $50,000 each to Virginia Lokey and Sandra Boomer, $180,545.44 for the care, treatment and hospitalization of the decedent and $2,140.25 for funeral expenses. Judge Cheryl V. Higgins denied motions to strike expert testimony and for a new trial. The Virginia Supreme Court accepted and consolidated appeals from Honeywell and Ford.  Finally in the *Ford Honeywell* case, *Honeywell* eventually provided warnings on its brakes, there is no evidence that the decedent saw the warnings, the court said. An insufficient warning acts the same as no warning, the court said. Justice LeRoy F. Millette Jr.

wrote for the court." *FORD MOTOR CO. v. BOOMER Record Nos. 120283, 120299. 736 S.E.2d 724 (2013) 285 Va. 141.*

In our instant case we have two different issues with the failure to warn. 1) There exist the factual issue of the Appellees failing to provide correct and adequate information concerning ingredients of its Dexilant product which cause impaired fertility in lab subjects, just as the Appellant has suffered from high dosages of the Dexilant product.  2) There exist the factual issue of Appellees failing to warn the Appellant of the side-effect of Stevens Johnson Syndrome stemming from the use of its product, due to the fact the standard of care of physicians does not require the physician to warn the patient, and this is also coupled with the fact the Appellees failed to place in the Physician's Desk Reference for the year of 2010 when the incident occurred, as well as the following year of 2011 the fact that there was a possibility to contract Stevens Johnson Syndrome from using their product.

Prescription drug products are generally protected under the "learned intermediary" doctrine, which holds that a prescription drug manufacturer

ordinarily only has a duty to warn a physician or healthcare professional of product risks, rather than the ultimate consumer.[7]

Facts exist which show that Takeda mislead physicians, and also failed to provide adequate warning to the Appellant. Facts exist which show that the FDA had requested that Takeda change two items on its package inserts and information to physicians and the public during the period of time of the Appellant's injuries.

One was for Takeda to provide more clarity on the issues of infertility to be posted, and that it supplement its documentation concerning toxicity levels of its product Dexilant. Evidence shows that the modifications occurred with 3 to four separate issuances in the year of 2010 of the package inserts. Further, evidence shows that the package inserts failed to list any information on the ingredients of Dexilant which cause impaired fertility in lab test, thus misleading the physicians and the public. Ingredients of Dexilant such as Tween 80 and other fertility

---

[7] *Va. Code Ann. § 54.1-3303.*
*A. A prescription for a controlled substance may be issued only by a practitioner of medicine, osteopathy, podiatry, dentistry or veterinary medicine who is authorized to prescribe controlled substances, or by a licensed nurse practitioner pursuant to § 54.1-2957.01, a licensed physician assistant pursuant to § 54.1-2952.1, or a TPA-certified optometrist pursuant to Article 5 (§ 54.1-3222 et seq.) of Chapter 32 of this title. The prescription shall be issued for a medicinal or therapeutic purpose and may be issued only to persons or animals with whom the practitioner has a bona fide practitioner-patient relationship.*

toxicants were not placed in the information that the Appellees made known to the physicians and the consumers.

In addition, the FDA had requested that Stevens Johnson Syndrome be added to the information for physicians and consumers, but Takeda failed to put the information for Stevens Johnson Syndrome in the Physicians' Desk Reference, which is used in the standard of care of physicians when they prescribe medications and discuss side-effects with their clients. The Physician Desk Reference of 2010 and 2011 both lack any warning concerning the life threatening condition of Stevens Johnson Syndrome to the physicians or the consumers.

The warning given to Appellant Ms. Ball was insufficient warning concerning the fertility toxicants in the ingredients of Dexilant, and if she had known the possibility of causing infertility she would not have taken the medication Dexilant.

Further, the notice given to Appellant Ms. Ball was insufficient for Stevens Johnson Syndrome for which she was in a medication drug induced coma for weeks, and for which her entire life has been changed due to the immune deficiencies she now has stemming from the Stevens Johnson Syndrome.

Therefore, the failure to warn was twofold in regards to the infertility and in regards to the Stevens Johnson Syndrome. Further, the newly found evidence had allegations that the Appellees marketed the 60mg Dexilant tablets to be used for the treatment of GERD for which the FDA had only approved 30mg to be used.

Therefore, the Appellant states that the District Court Erred when dismissing the claims concerning the failure to warn by the Appellees stemming from both the failure to warn in regards to infertility toxicants, and also that of Stevens Johnson Syndrome separately.  The Appellants complaint containing the matter of first impression under the new case law of Virginia concerning insufficient warning should not have been dismissed with prejudice.

**VI.    Whether the District Court abused its discretion in denying an extension to bring on new counsel and to provide the expert opinion in light of the circumstances, of the newly discovered evidence, which would change the opinion of the Appellant's experts, and for which the court had the Appellant submit the expert opinion early, for the benefit of the Appellees.**

**A. Good Cause to Extend Time For Disclosure of Experts**

It is the practice of high profile litigants to prolong litigation hoping that litigants on the other side will run out of time, money, or the desire to continue.

This effect as the District Court pointed out privileges wealthy litigants like the Appellee Takeda and is inconsistent with the historical spirit of federal procedure.[8]

Obtaining the expert is part of the issue for some litigants, coupled with the fact information needed to supply to the experts was withheld by the Appellees, thus causing delays, and increased communications which are not free, but require a fee. No harm would have occurred to either party with a one month delay. Further, the expert opinion due to the issues of discovery and other matters are not to be disclosed until 90 days before trial.

---

[8] Fed.R.Civ.P. 26 In the matter of the expert opinion it must include the following information to assist the trier of facts in a matter: *(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.*

*(C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under <u>Federal Rule of Evidence 702</u>, <u>703</u>, or <u>705</u>; and (ii) a summary of the facts and opinions to which the witness is expected to testify.*

(D) *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

The Court had stated that it was making the Appellant submit her expert opinion early for the sake of the Appellees.  When the Appellees refused to provide needed information for the expert opinion of the Appellant's expert, the Appellant did what was necessary and asked for an extension of time which would by the rules of Federal Civil Procedure would not have harmed anyone, further, the fact that the Appellees had acted in bad faith, also required that there be an extension of time for the Appellant's expert to file a written opinion.

Federal Rule 62(b) Stay Pending the Disposition of a Motion. On appropriate terms for the opposing party's security, the court may stay the execution of a judgment—or any proceedings to enforce it—pending disposition of any of the following motions: under Rule 59, for a new trial or to alter or amend a judgment; or under Rule 60, for relief from a judgment or order.

41

The Appellant's case was not scheduled for trial until January, 2014 thus making the 90 day mark for expert opinion under the federal rules October 2013. The Appellant's case was dismissed in August of 2013, with the court citing a portion of the reason was the Appellant did not have an expert. The Appellant had an expert, but there were issues with the opinion and the timing due to delays in discovery disclosures by the Appellees. The Appellees did not provide documents demand, and did not answer interrogatories, and did not answer admission appropriately. In regards to much of the discovery, the Appellees themselves stated they were going to get a protective order. But, the Appellees did seek the protective order, and the Appellant had put them on notice of the next motion to compel, she was going to file. The Admissions and other discovery were key items needed for the Appellant's experts in light of the allegations by Dr. Ge and others in the whistleblowers' litigation against Appellees.

## B. Request for New Counsel to Join Team Appellant Is Norm In Litigation

The Court was asked to stay the matter to allow for a new counsel to come aboard to assist in the matter for the interest of the Appellant, as well as in the interest of justice in the fact the Appellant showed the Court that the Appellees had allegations of misleading the FDA and physicians in reference to Dexilant. In addition to the fact the Appellant had to also bring a motion to compel.

**VII.  Whether a Pharmaceutical Company may be held liable for the……..43 alleged acts of misrepresentation, fraud, negligence and other violations in which the complaint gave the Company sufficient notice within the pleading of the injuries, damages, and the allegations against the Company.**

Appellant in its original Complaint in the instant case plead facts-pleading which includes the basic pleading required by Rule 8 to give notice.  Further, the facts-pleading of the Appellant were similar to those found in the after discovered Complaint of the *United States v. Takeda* the Appellees, which was a different type of claim regarding a whistleblower claim, by Dr. Ge that did not include any physical injuries from taking the Dexilant medication.

Then the Appellant provided the Court with a proposed Complaint that was facts-plead, which includes the notice required by the Rule 8 standards.  Then the Court dismissed the Appellants replete fact-plead complaint, and refused to grant the Appellant the ability to file the proposed replete fact-plead complaint.  In the Court's ruling the Court required the Appellant to file a 12 page complaint, when the pervious Complaint and proposed complaint had at least 24 pages of facts alone dealing with the complex facts of the Appellant's case.  Further, viable material claims were dismissed by the District Court without consideration of the Rule 8 minimum standards, which were exceeded in the original complaint, as well as in the subsequent proposed complaints.

43

To survive motion to dismiss, complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; claim has "facial plausibility" when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for misconduct alleged. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

"Plausibility" standard, for complaint to survive motion to dismiss for failure to satisfy short and plain statement requirement, is not akin to probability requirement, but asks for more than sheer possibility that defendant has acted unlawfully. Fed.Rules Civ.Proc.Rule 8(a)(2), 28 U.S.C.A.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly,* 550 U.S., at 555, 127 S.Ct. 1955,

In the instant case the Appellant plead in her first Complaint, and 1st proposed complaint replete factual allegations, however, the Court rejected the complaint, and the proposed complaint, and then dismissed viable material claims, and required the Appellant to file a 12 page Amended Complaint, for which the Court dismissed stating it failed to state a claim for which relief could be granted. The fact that the Appellant's initial complaint and 1st proposed complaint, and

subsequent proposed complaints were fact-pleading, and were over and above the Rule 8 pleadings, just as the government had filed against Takeda themselves.

The Court required the Appellant to have 12 pages for her complaint, in which the Appellant plead  sufficient factual matters, which if accepted as true, stated a claim for relief that is plausible on its face," _id., at 570, 127 S.Ct. 1955._  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. _Id., at 556, 127 S.Ct. 1955._

The Appellant had cited facts in all her complaints which showed the Court that she incurred complications with fertility from taking Dexilant; the Court could also draw from the pleadings that the Appellees failed to provide sufficiently proper warnings as required by pharmaceutical companies in matters of lab results which show impairment of fertility in regards to uterus deformities.  These allegations were specific and gave the Appellees proper notice.

The Supreme Court has stated: "Two working principles underlie _Twombly._ First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. _Id., at 555, 127 S.Ct. 1955._ Second, determining whether a complaint states a plausible claim is context-specific, requiring the

reviewing court to draw on its experience and common sense. _Id.,_ at 556, 127 S.Ct.

1955. A court considering a motion to dismiss may begin by identifying allegations

that, because they are mere conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the complaint's framework, they must be

supported by factual allegations. When there are well- pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief. Pp. 1941, 1948 – 1951."

The following are examples of the language that was listed in the Appellants

complaints: Original Complaint in 3:13-cv-168 states many factual issues.[9]

---

[9] _65. Takeda wholly failed to warn the plaintiff and other that Dexilant caused damage to fallopian tubes affecting physical health; Appx pg 23 par. 65._

_67. Takeda wholly failed to warn the plaintiff and other that Dexilant can cause heart and other medical conditions which in human data can cause complications with future pregnancies. Appx pg. 23 par 67._

_69. Because of this failure to warn defect, Dexilant was unreasonably dangerous to an ordinary person, like Plaintiff of childbearing years who used Dexilant in a manner in which in which it was intended by Takeda to be used. Appx pg 23 par 69._

_72. Particularly in light of Takeda's avoidance of the FDA requirements based upon issues concerning impairment of fertility, and the intentional minimization of the risk associated with reproduction activity information missing from the black box and labeling warnings regarding the use of Dexilant, the Defendants failed to allow the plaintiff or her doctor to make an informed decision of the Dexilant use for her minor pains. Appx pgs. 23-24 par 7_

Appellant argues that not only was her complaint sufficient in regards to Rule 8, but her complaint and proposed complaint we congruent with the policy regarding the interest of justice for her claims to be heard.

The District Court dismissed with prejudice counts II Failure to provide precautions, VI Negligence Regarding Physicians Standards of Care Concerning Stevens Johnson Syndrome, VII Fraud as failing to plead with particularity, and punitive Damages.

In looking at counts VII Fraud and VIII Punitive Damage the Appellant states that they were sufficiently plead to survive a 12(b)(6) motion.[10]

Then under the Count of Fraud the following allegations were listed which are made in particularity:

Injury to fallopian tube stemming from misleading and false statements; The Appellants had reason to know or knew that impaired fertility would occur from use of product; That the failure to disclose and or intentionally concealing the

---

[10] *Par 131 states: Defendants made false statements, and misrepresentations of material facts to/and omitted and/or concealed material facts from the public about impaired fertility which the FDA requires to the Plaintiff and her prescribing physician in the advertising, marketing, and in the listed side effects of the product. Appx. Pg 34, par 131.*

results of test showing potential human risk the Defendant knew or had reason to

know. (See Appx. Pg 35)

In paragraphs 39 and 40 the Appellant stated that she stated that the

Appellees failed to provide warning regarding Dexilant, and Dexilant's data which

showed impaired fertility. (See Appx. Pg 19).

In paragraphs 70, and 71 which are also part of the Fraud claims a plead, the

Appellant stated that there was scientific information that Dexilant could cause

fertility impairment in regards to the Appellant's fallopian tubes.

### (i) The Amended Complaint That Was Limited To 12 Pages By The Court

The Court dismissed the Appellant's entire complaint when the Appellees

sought a partial dismissal of Counts II, and III, and the total dismissal of Counts I

and IV.

The Court dismissed the Appellant's case after limiting the Plaintiff to just

12 pages to list her claims.  The Court stated: "The Court dismisses the plaintiff's

negligence design and negligent manufacturing claims because Ball does not

articulate the factual basis for these claims."  Appellant also states that the Court

limited the Appellant's First Amended Complaint to 12 pages. Appx. Pg. 306.[11]

The exhibits are the Physicians' Desk Reference, and Kapidex/Dexilant web

warnings showing the ingredients of Dexilant that causes impaired fertility of the

fallopian tubes.

*21. Takeda sold the Dexilant/Kapidex in a defective labeling condition of no warning, no*
*precautions, and inadequate warnings for smooth muscle injuries to the fallopian tube, and*
*Stevens Johnson Syndrome, thus causing the failed and inadequate warnings and precaution gave*
*Planitiff "an insufficient warning [which] is in legal effect no warning." Appx. pg. 388.*

*23. Medical studies, and scientific research studies have shown impaired fertility in regards*
*to smooth muscle injuries such as fallopian tubes, and as well as uterine deformities stemming from the use of ingredients of Dexilant and Kapidex, which also include Polysorbate 80,*
*Titanium Dioxide, and other ingredients. Appx. pg. 388.*

--------------------------------

[11] Count 1 Negligence has the following notice pleadings with the exhibits concerning Dexilant:*19. The Dexilant/Kapidex ingredients which caused the fallopian tube closure of Monica L.Ball had been known or Takeda should have known or had reason to know of the injuries from testing of the product's ingredients, yet the information was not in package insert for 2010. (SeeExhibit A which is the 2010, B which is 2010, and C which is 2011 insert). Appx. pg 388.*

Further, the other counts of the Appellant's 1st Amended Complaint state

facts and pleading which include the following:

Count II Negligence Per Se under Virginia Code 54.1 at. el.

Under the Virginia Code it states the following about samples given to

patients that come from pharmaceutical drug companies.

*§ 54.1-3304. Licensing of physicians to dispense drugs; renewals.*

*For good cause shown, the Board may grant a license to any physician licensed under the laws of Virginia authorizing such physician to dispense drugs to persons to whom a pharmaceutical service is not reasonably available. This license may be renewed annually. Any physician or osteopath so licensed shall be governed by the regulations of the Board of Pharmacy when applicable. (1976, c. 614, § 54-524.34:1; 1980, c. 288; 1988, c. 765.)*

In regards to Appellant's Complaint Count II of the complaint contains

paragraphs 38 and 39 listed below.  The negligence per se claims are substantiated

under the pleading found in Count II, and the claims satisfy the request for relief

that can be granted under Rule 8 pleadings:

*38. At the time of injury under Va. Code 54.1, at. el. there is a requirement for Pharmaceutical companies to provide warnings regarding medication for which if there is evidence from human data that the drug may be carcinogenic or mutagenic or that it impairs fertility, that the information shall be included under the "Warnings" section of the labeling and black box warnings.*
*39. At the time of injury under Va. Code 54.1 at. el. there is a requirement for Pharmaceutical companies to provide warnings regarding medication for packaging warnings, labeling warnings and precautions, and for professional labeling which if there is evidence from human data that the drug may be carcinogenic or mutagenic or that it impairs fertility, that the information shall be included under the "Precautions" section of the labeling and box precautions.*

Under Va. Code 54.1 the regulations state that packaging for donated or sample drugs are to comply and have directions attached.

Interfere with any legally qualified practitioner of medicine or osteopathy participating in an indigent patient program offered by a pharmaceutical manufacturer in which the practitioner sends a prescription for one of his own patients to the manufacturer, and the manufacturer donates a stock bottle of the prescription drug ordered at no cost to the practitioner or patient. The practitioner may dispense such medication at no cost to the patient without holding a license to dispense from the Board of Pharmacy. However, the container in which the drug is dispensed shall be labeled in accordance with the requirements of § 54.1-3410, and, unless directed otherwise by the practitioner or the patient, shall meet standards for special packaging as set forth in § 54.1-3426 and Board of Pharmacy regulations.

## § 54.1-3426 Regulations for special packaging.

*A. The Board shall adopt standards for special packaging consistent with those promulgated pursuant to the federal Poison Prevention Packaging Act of 1970 (15 U.S.C. § 1471 et seq.). The Board may exempt any drug from the requirements of special packaging and shall exempt any drug exempted pursuant to the Poison Prevention Packaging Act of 1970.*

*B. A prescriber or a purchaser may direct that a drug, which is subject to being dispensed in special packaging, be dispensed in other than special packaging.*

51

The fact that the Appellees misinformed the Appellant's physician the proper packaging information was not submitted to the Appellant when she received the free sample of medication from Appellees through her physician. Count III of Appellant's Complaint states claims of the Breach of Implied Warranty and coupled with the specifics states a claim in which relief can be granted:

*49. Defendants had reason to know, or knew these implied representations and warranties were false, misleading, and inaccurate in that DEXILANT was unsafe, degraded Plaintiff's health and caused severe impaired fertility.*
*50. Plaintiff relied on the implied warranty of fitness for a particular use and purpose.*
*51. Defendants made warnings, and precaution which did not regard deformities to the female uterus regarding the female fallopian tubes, and Defendants manufactured, compounded, portrayed, disturbed, recommended, merchandized, advertised, promoted, and sold DEXILANT for treatment of heartburn, acid reflux, ulcers and inflammation of the esophagus and for other label purposes.*

The Complaint states that the product Dexilant supplied by Appellees was impliedly warranted it was safe and would not injure the fallopian tubes of the Appellant, this includes the pervious paragraphs which include the ingredients of Dexilant including known fertility toxicants  Polysorbate 80, Titanium Dioxide, and other ingredients that caused uterus deformities in test and data that was in existence at the time the Dexilant product was formulated by the Appellees.

The Appellant argues that her Original complaint, proposed complaint, and her 1st Amended Complaint were more than sufficient to comply with the Supreme

Court's long-standing notice-pleading decisions, which all hold that plaintiffs need only provide the short statement required by *Federal Rule of Civil Procedure 8(a)* to place defendants on notice of the nature of the claims against them. But, the Appellant also states that her original complaint in the instant case, proposed complaint, proposed second Amended Complaint 1, and proposed second Amended Complaint 2 all provided facts-pleading that also satisfied the Rule 8 statements. The Appellant further states that all of her complaints provided the facts and evidence that might ultimately be used to prove those claims, and gave enough notice to the Appellees regarding her claims.

The purpose of the Federal Rules of Civil Procedure Rule 8 was designated to replace both the technicalities of common law pleadings and the detail of "code" or "fact-pleading" with a new regime of simplified notice pleading. *See generally* Charles E. Clark, <u>*Simplified Pleading*, 2 F.R.D. 456, 456-67 (1943)</u>; Charles E. Clark, *Handbook of the Law of Code Pleadings* §38, at 241-43 (2d ed., 1947).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver, 510 U.S. 266, 268 (1994),* and must construe all factual allegations in the light most favorable to the plaintiff, see *Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).*

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards*,"* *Erickson v.Padres, 551 U.S. 89, 94 (2007),* which require only that a plaintiff submit "a short and plain statement of the claim showing that [he] is entitled to relief." *FED. R. CIV. P. 8(a)(2).*

When a defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must evaluate the complaint's sufficiency, viewing all well-pleaded factual allegations as true and construing them in the light most favorable to the plaintiff. See *Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d176, 180 (4th Cir. 2009).* To survive such a motion, the plaintiff must present enough factual content to render his claim "plausible on its face," i.e., to enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,556 U.S. 662, 678 (2009).*

Further, "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); accord Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).* In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly:* "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *556 U.S.*

*at 678.* And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id. at 679.*

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at 678.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Id.*, quoting *Twombly, 550 U.S. at 555*, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under *Rule 12(b)(6),* the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff the benefit of all inferences that can be derived from the facts alleged.

All of the complaints submitted by the Appellant were sufficient to give notice to the Appellees of the claims that she was presenting against them. Further, after it was found that the Appellees had not only mislead the physicians, and the FDA, and they had also acted in bad faith by arguing to have the District Court to dismiss the Appellant's claims of fraud, express warrantees, and punitive damages, the Court should have allowed one of the proposed Second Amended

Complaints to be filed. The Appellant disclosed evidence from another law suit which the Appellee did not disclose in discovery concerning material issues in dispute in the instant case regarding the 30mg and 60mg dosages for the very treatment of the Appellant's condition of GERD. The Appellant should have been able to amend her complaint in the minimum of the interest of justice.

In addition, to the issues of the dosage of 60mg being marketed for the treatment of GERD, but which had been denied by the FDA, there was also the fact that Appellees knew of the heart issues of the Appellant. Information that the Appellant had died three times from cardiac arrest had been given to the Appellees, and this coupled with the fact that Dr. Ge case in the whistleblower's case alleged that Takeda did not not list vital cardiac arrest information in the package inserts for physicians. One of the proposed Second Amended Complaints which were submitted prior to the Court granting the Appellee's dismissal under the 12(b)(6) motion should have been allowed to be submitted as an amended complaint to continue the litigation.

**C.    The District Court stated it dismissed the Complaints concerning Stevens Johnson without considering the issues with the package inserts, and the standards of care of physicians.**

The District Court dismissed the Appellant's claims associated with the package inserts, however, there were several package inserts from the year of

2010, and further, the package insert is not the only items used by physicians under the physicians' standards of care in prescribing medication. Under the standard of care of physicians they use the Physicians' Physicians' Desk Reference to prescribing information. However, the Physician's Desk Reference did not have Stevens Johnson Syndrome listed in 2010 or 2011 as being a side effect of Dexilant. Dismissing the claim without giving it full consideration was an abuse of discretion by the District Court. Therefore, there would a factual question in regards to the matter before the court.

**D.     The District Court did not consider the issue of the deformity of the Appellant's fallopian tube stemming from the use of Dexilant, which is not related to her claims of Stevens Johnson.**

The District Court in its order dismissing the Appellant's claims did not consider the fact that the Appellant's Amended Complaint explicitly stated that she incurred injuries from the ingredients of Dexilant, which are totally separated from the issue of Stevens Johnson Syndrome. The Appellant stated that ingredients of Dexilant cause infertility toxicity, and have been known in lab test to cause deformities to the fallopian tubes.

The Appellant has treating physicians as her experts as well, and in regards to the after discovered evidence, it was found that the Appellees had not disclosed the information. Further, there were allegations and evidence with proof that the

Appellee had engaged in activities which misled the FDA and physicians. Any

opinion to be rendered by the Appellant's experts would require to be adjusted and

could possibly change the opinions dependent upon the information from the Dr.

Ge case against Takeda. In order to provide an informed opinion, and in the name

of justice the Appellees should be required to provide the information, and all of

the Appellant's experts should be able to use the information in their opinion as

well. See Appx. pgs. 1162-1199.

**RELIEF FROM JUDGMENTS**

The Appellant seeks relief in the from Judgment of dismissing her claim,

relief from judgment concerning her motion to compel, relief from Judgment to

amend her complaint, and relief from judgment with a reversal of the

aforementioned judgment in this paragraph, and the matter be remanded to the

District Court as directed by the Fourth Circuit Court of Appeal. The Appellant

request this also as a matter of justice due to the circumstances of the after

discovered evidence as well.

**Conclusion**

For the reasons urged herein, it is requested that this Court grant the

Appellant's appeal and reverse the judgment of dismissal of the trial court below,

58

remanding the case to the United States District Court for the Eastern District of

Virginia, for further proceedings.

Respectfully submitted,

By: s/Jerrod M. Smith                    Date: February 18, 2014
Jerrod M. Smith, Va. Bar No. 66279
**JERROD MYRON SMITH & ASSOCIATES**
6802 Paragon Place, Suite 410
Richmond, Virginia 23230
(804) 426-5645 (telephone)
(804) 441-6001 (facsimile)/Email:jerrodmyronsmith@msn.com
Counsel for the Appellant Monica L. Ball
REQUEST FOR ORAL ARGUMENT IN THIS MATTER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of February, 2014, a copy of the foregoing Opening Brief of the Appellant was sent by electronic mail to:

Damon W.D. Wright, Va. Bar No. 40319
Stephen H. Swart, Va. Bar No. 79125
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, Virginia 22182
202-344-4937 (telephone) 202-344-8300 (facsimile)
dwdwright@venable.com
shswart@venable.com

Counsel for Defendants Takeda Pharmaceuticals America, Inc. and Takeda Pharmaceutical Company, Ltd.


<u>/s/Jerrod M. Smith (VSB #66279)</u>
JERROD MYRON SMITH & ASSOCIATES
6802 Paragon Place, Suite 410
Richmond, Virginia 23230
(804) 426-5645 (telephone)
(804) 441-6001 (facsimile)
Email: jerrodmyronsmith@msn.com
Counsel for Plaintiff

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____      Caption: _____

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.  Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ ]      this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]      this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ]      this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ]      this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____